SEARS, A MINOR, APPELLANT, *v.* CITY OF CINCINNATI, APPELLEE.

(No. 71-72—Decided July 19, 1972.)

**158**

*Mr. Harry Gehler,* for appellant.

*Mr. William A. McClain,* city solicitor, and *Mr. Richard A. Castellini,* for appellee.

O'NEILL, C. J. This appeal again brings before this court the question of whether a municipality, which owns a municipal hospital, may assert the defense of governmental immunity in a suit for the negligent acts of the hospital's employees occuring within the scope of their employment or agency.

The existing rule, as expressed in the syllabus of *Hyde* v. *Lakewood, supra* (2 Ohio St. 2d 155), is that:

''1. Unless there is a statute removing immunity, a governmental unit or agency may escape liability for the commission of a tort upon a showing that a governmental function was being performed at the time the tort occurred.

''2. Whether the performance of various activities by a municipality is governmental or proprietary frequently depends on the peculiar facts of the particular case. In one instance a municipally owned hospital may be found to be carrying on a governmental function in the manner of its operation, whereas in another instance a finding may be

made that a municipally owned hospital is being operated in a proprietary capacity."

Under the foregoing rule, determination of the question of liability of the municipality turns upon the facts.

In *Hyde* v. *Lakewood, supra* (2 Ohio St. 2d 155), the facts showed that taxpayers of the city of Lakewood had voted funds for the construction and equipping of the hospital; that the hospital was not operated "with a view to profit"; that it was managed by a board of trustees established by city charter; that purchases were conducted by competitive bidding; that hospital accounting records were kept by the municipality's finance department; that 37% of the annual admissions were Lakewood residents; that an outpatient clinic was maintained for indigents; and that all who applied for admittance were accommodated. Those facts were held to support a finding that the hospital operation constituted a governmental function.

In *Holt* v. *Cincinnati,* a companion case to *Hyde,* although the hospital was owned by the city of Cincinnati, the facts revealed that the hospital was operated by the board of directors of the University of Cincinnati; that accounting operations were performed by the University; that the hospital was self-supporting; that only paying patients were admitted; and that only patients of the faculty members of the College of Medicine were admitted to the hospital. It was held that those facts supported a determination that the hospital was "essentially a proprietary undertaking" and that the municipality could not avail itself of the defense of governmental immunity.

Prior to the decision of this court in *Avellone* v. *St. John's Hospital* (1956), 165 Ohio St. 467, 135 N. E. 2d 410, the defense of immunity also applied to hospitals operated by charitable corporations not for profit. That case held that "A corporation not for profit, which has as its purpose the maintenance and operation of a hospital, is, under the doctrine of *respondeat superior,* liable for the torts of its servants," thus stripping charitable hospitals of their immunity.

The defense of governmental immunity also arises in

cases involving injury to a patient in a hospital owned and operated by an instrumentality of the state. The rule governing these hospitals, as expressed in paragraph four of the syllabus in *Wolf* v. *Ohio State University Hospital* (1959), 170 Ohio St. 49, 162 N. E. 2d 475, is that such hospitals "* * * are not suable in tort until the General Assembly * * * enacts a statute determining the courts and the manner in which such suits may be brought against the state."

It can be seen that application of the rules laid down in *Hyde, Avellone* and *Wolf, supra,* leads to varying results for injured patients, depending upon the type of hospital in which an injury is sustained: (1) A patient who is injured by the negligence of an employee of a charitable hospital may maintain an action against the hospital for damages: (2) A patient similarly injured in a hospital which is an instrumentality of and operated by the state may not maintain an action against the hospital; and (3) A patient suffering injuries in a municipally-owned hospital may maintain an action if the operation of the hospital is determined to be a proprietary function, but may not maintain an action if the operation of the hospital is determined to be a governmental function.

In the instant case, the hospital is owned by defendant city. Although it does not appear in the pleadings, the defendant argues in its brief that the hospital "is operated by the University of Cincinnati * * * a public municipal university * * * owned and operated by a municipal corporation * * *." The cause was decided on demurrer in the trial court; thus there is no evidence of record upon which a determination could be made that defendant's hospital is either governmental or proprietary in nature. However, this does not foreclose consideration of the larger question, *i. e.*, whether the defense of governmental immunity should be available to municipally-owned hospitals.

Provision is made in R. C. 715.37 for municipally-owned hospitals. That section provides that municipal corporations may "* * * erect, maintain and regulate * * * hospitals * * *." This court agrees with the statement in

*Hyde, supra,* that "this legislation [R. C. 715.37] is designed to promote public welfare generally." It observes, however, as did Paul M. Herbert, J., in his dissent in *Hyde,* that R. C. 715.37 imposes no duty upon municipalities to own or operate a hospital. In addition, this court is of the opinion that the maintenance of a hospital is not essential to the government of a municipality.

This court concludes that where a municipality owns a hospital, thereby providing a service not essential to municipal government, there is no basis in logic for granting the municipality governmental immunity as to that hospital. In fact, logic dictates that a municipality owning a hospital should be treated in the same manner as was the charitable corporation in *Avellone, supra,* and should be liable in tort for injuries sustained by its hospital patients due to the negligence of its employes or agents.[1]

Therefore, this court holds that a municipal corporation which owns a municipal hospital is, under the doctrine of *respondeat superior,* liable for the torts of its servants and may not interpose the defense of governmental immunity against an injured patient in an action for damages.

In so holding, this court necessarily overrules *Hyde v. Lakewood, supra* (2 Ohio St. 2d 155). Specifically, it rejects the statement in paragraph one of the syllabus that a legislative act is required to remove the governmental immunity in question. Rather, this court approves the reasoning of Gibson, J., in his concurring opinion in *Hack v. Salem*[2] (1963), 174 Ohio St. 383, 396, 189 N. E. 2d 857, wherein he stated:

---

[1] The reasons expressed in *Avellone* for abrogation of the immunity doctrine apply with equal force here.

[2] The writer of this opinion concurred in the concurring opinion of Gibson, J., in *Hack v. Salem, supra.* Believing that stability, consistency and predictability are important in the law, the writer made it known to the other members of the court that he would not pursue his position in *Hack v. Salem* further until such time as at least five members of the court were of the same opinion, thus providing some measure of insurance that a changed position of the court would not be changed again by the replacement of a single judge on the court.

" * * * Admittedly the General Assembly has the authority to change or abolish the rule of immunity created by this court for municipal corporations in regard to their so-called governmental functions, but that in no way precludes this court from changing its own rule. * * *"

One other matter raised by defendant requires discussion.

In its brief, defendant states that in 1967 the General Assembly conferred upon the Board of Directors of the University of Cincinnati corporate existence under the provisions of R. C. 3349.02, thus making the University an instrumentality of the state. It is defendant's position that it should, therefore, come under the rule announced in *Wolf* v. *Ohio State University Hospital, supra* (170 Ohio St. 49). *Wolf,* however, is distinguishable. There, the hospital was owned *and* operated by an instrumentality of the state, which enjoyed the state's immunity from suit and to which the provisions of Section 16 of Article I of the Ohio Constitution were applicable. Here, the hospital is owned by a municipality which, in this instance, as this court has above determined, is not protected by the doctrine of governmental immunity.

For the foregoing reasons, the judgment of the Court of Appeals is reversed and the cause is remanded to the Court of Common Pleas for further proceedings according to law.

*Judgment reversed.*

SCHNEIDER, HERBERT, CORRIGAN, STERN and LEACH, JJ., concur.

BROWN, J., concurring. I concur insofar as my concurrence herein does not conflict with my dissent in *Krause* v. *State* (1972), 31 Ohio St. 2d 132.